Anna GROFT, Personal Representative of the Estate of Charles William Groft, Jr.

v.

HEALTH CARE CORPORATION OF the MID ATLANTIC aka Carefirst.

Civ. No. S 91–3591.

United States District Court, D. Maryland.

June 11, 1992.

David Harrison Pratt, Stoner, Preston & Boswell, Westminster, Md., for plaintiff.

Price O. Gielen and Bruce M. Luchansky, Neuberger, Quinn, Gielen & Rubin, P.A., Baltimore, Md., for defendant.

SMALKIN, District Judge:

This ERISA case is before the Court on the defendant's motion for summary judgment on the plaintiff's complaint that her late husband's claim under an employee health benefits plan administered by the defendant was improperly denied. The claim was for a lung transplant operation to treat the deceased insured's end-stage emphysema.

The summary judgment motion has been fully briefed, and no oral argument is deemed necessary. Local Rule 105 (D.Md.).

Summary judgment is to be granted if the record, taken in the light most favorable to the party opposing the motion, would not support submitting the case to a trier of fact at the directed verdict stage under the applicable proof burden. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Under the decision in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery. 477 U.S. at 326, 106 S.Ct. at 2554. In this case, discovery has been proceeding since February 25, 1992, pursuant to a scheduling order. Although the plaintiff, in her opposition, baldly states that "[d]iscovery is not yet complete and additional supporting facts shall be developed throughout discovery," Plaintiff's Response to Defendant's Motion for Summary Judgment at ¶ 4, plaintiff nowhere states with any specificity just what she hopes to find out, in further discovery, to support her opposition. In her supporting memorandum, plaintiff is just as vague: "Discovery is not yet complete but what has been developed thus far is sufficient to show that the Defendant has abused it's [sic] discretion, both in substantive and pro-

cedural matters as to this claim. Additional discovery will further support the Plaintiff's contention that the Defendant abused its discretion." Memorandum in Support of Plaintiff's Response at 8.

Given that there has been a substantial period allowed already for discovery, given the vagueness of plaintiff's claims that additional discovery would further support her position (not to mention her contention that the discovery to date *is* sufficient to support her opposition), and given the absence here of the Rule 56(f) affidavit recognized in *Celotex*, 477 U.S. at 326 n. 6, 106 S.Ct. at 2554 n. 6, as the appropriate way to present a claim of insufficient discovery in aid of an opposition, the Court will now proceed to address the motion on its merits.

■ The Fourth Circuit, following the decision of the Supreme Court in *Firestone Tire & Rubber Corp. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), addressed the question of the appropriate standard of judicial review of ERISA plan decisions in *de Nobel v. Vitro Corp.*, 885 F.2d 1180 (4th Cir.1989). Under those cases, the first inquiry is whether the plan vests discretion in the plan fiduciaries to decide the matter at issue. If so, the scope of judicial review is the abuse of discretion standard, where the denial of benefits may be disturbed "only on a showing of procedural or substantive abuse." *de Nobel*, 885 F.2d at 1186. The ultimate inquiry is one of reasonableness, and, if the fiduciaries' determination is reasonable, it is entitled to stand, even if a contrary determination would have been more reasonable. *Id.* at 1188.

In this case, defendant contends, plaintiff seems to concede, and the Court finds, that the fiduciaries had a clear grant of discretionary authority to decide whether to exclude coverage on the basis that a particular treatment was experimental (*see* Plan at § XI.C.13, allowing exclusion if treatment is experimental "in the opinion of Health Plan"), as well as general discretionary authority to settle disputed eligibility questions. *See Makar v. Provident Life &*

*Accident Ins. Co.*, Civ. No. MJG 90–1733, 1991 WL 350040 (D.Md. June 12, 1991) (J. Frederick Motz, U.S.D.J.) (construing identical plan).

■ The next question is whether, substantively, the fiduciaries' rejection of the claim was reasonable. Without any prospect of genuine factual dispute, it clearly was. They had before them the opinion of Dr. Cooper, the treating surgeon, who, not surprisingly, claimed that the procedure was not experimental. They also had before them the opinion of Dr. Marie D. Chatham, a board-certified pulmonologist, stating that lung transplantation for emphysema was then considered, in the consensus of pulmonological opinion and in light of the literature, to be "experimental and beyond the boundaries of ordinary therapy." Dr. Chatham went on to rebut the opinion of Dr. Cooper by stating, *inter alia*, that no such operations were then performed by the Johns Hopkins Transplant Team.

Faced with this conflicting evidence, the fiduciaries' decision would have been reasonable whichever way it had gone. Here, it went against coverage. As *de Nobel* makes clear, the fact that an opposite decision would have been as, or more, reasonable does not warrant reversal by this Court. *de Nobel*, 885 F.2d at 1188–91.

The next question that the *de Nobel* court addressed, and which this Court must itself next address, is whether the decision of the fiduciaries—though perhaps within the realm of reason—was tainted by "procedural abuse" or administrative bias. *Id.* at 1186, 1191. Even accepting the plaintiff's claims of conflict of interest arising from the for-profit nature of the plan here as entirely true (though the record shows that the three fiduciaries who considered the issue were "outside" fiduciaries (two plan members and one union official)), this is but a factor to be taken into account in determining reasonableness.

■ In view of Dr. Chatham's opinion, there is no triable issue on reasonableness, whether or not a coverage decision would have eaten into the profits of the plan and thus generated a conflict of interest. In this connection, there is a distinction to be drawn between cases in which, as here, the essence of the challenged decision is the resolution of conflicting medical opinions, as opposed to cases in which a judgment as to eligibility calls for no resolution of conflicting expert opinion, but merely calls for a discretionary judgment on how to invest funds or how to interpret plan language, without any outside lodestar, as was the case under the facts of *de Nobel* and *Firestone*, both discussed *supra*.

In the latter sort of case, the opportunities to advance a hidden agenda enhancing a fiduciary's conflicting interest by means of an "objectively reasonable" decision are both manifest and suspect, and the existence of a conflict alone might warrant trial. In a case of the former sort, though, such as the present one, the mere showing that the plan's profitability might suffer as a result of a coverage decision is insufficient to generate a triable issue, where there is a medical opinion from a qualified specialist—who herself is not charged with any conflict of interest—that provides a reasonable basis for the denial. To hold otherwise would open up all reasonableness determinations of an "interested" plan to second-guessing by the trier of fact, under amorphous criteria, in *every* case, thus reducing the standard of review in *Firestone* and *de Nobel* to a hollow shell.

■ The final question is whether the procedural shortcomings identified by the plaintiff constitute the sort of procedural abuse, either alone or in combination with the interestedness of the fiduciaries, that warrants trial. The answer is *no*. The plaintiff seems to demand that the procedural protections associated with a trial— or at least an administrative adjudication by a governmental agency—be applied to the grievance and appeal procedures under this plan. There is no such requirement in ERISA or in the plan at issue here, and, of course, the constitutional requirement of procedural due process has no place in the functions of a private entity, even one so highly regulated as the insurance industry has become under ERISA's pervasive aegis. The Court finds no procedural abuse

in this case warranting the denial of summary judgment.

In short, on this record, given the opinion of Dr. Chatham, no fact-finder could find the defendant's decision unreasonable, unless the fact-finder's judgment were overborne by sympathy for the insured. Under *Anderson v. Liberty Lobby, Inc., supra*, such a fact-finder would not herself be acting reasonably, and there is, thus, no sufficient justification for withholding summary judgment.

Accordingly, a separate order awarding summary judgment to the defendant will be entered.

### JUDGMENT ORDER

For the reasons stated in a Memorandum Opinion entered herewith, it is, this 11th day of June, 1992, ORDERED and ADJUDGED:

1. That the defendant's motion for summary judgment BE, and it hereby IS, GRANTED;

2. That judgment BE, and it hereby IS, entered in favor of the defendant, against the plaintiff.